```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


ERIC HANTMAN, ET AL.,          .
                               .
               Plaintiffs,     . Case No. 18-cv-11047(KM)
                               .
VS.                            .
                               . Newark, New Jersey
GARTH ANDRE NAAR, ET AL.,      . June 5, 2019
                               .
               Defendants.     .
                               .


                       TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE JAMES B. CLARK
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:
For the Plaintiff:       JONATHAN COHEN, ESQ.
                         Kishner, Miller & Himes, P.C.
                         420 Lexington Ave., Suite 300
                         New York, NY 10170
                         (212) 585-3425


For the Defendants:      N. ARI WEISBROT, ESQ.
                         Law Offices of N. Ari Weisbrot,
                         LLC
                         1099 Allessandrini Avenue
                         New Milford, NJ 07646
                         (201) 788-6146


Audio Operator:


Transcription Company:   KING TRANSCRIPTION SERVICES
                         3 South Corporate Dr.
                         Suite 203
                         Riverdale, N.J. 07457
                         (973) 237-6080


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

APPEARANCES, CONTINUED:

DAVID J. KLEIN, ESQ.
Brach Eichler, LLC
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700

RUSSELL M. FINESTEIN, ESQ.
Finestein & Malloy, LLC
6 Commerce Dr. #304
Cranbury, NJ 07016
(973) 635-4500

BETSY ANN ROSENBLOOM, ESQ
Williams, Caliri, Miller &
Otley, PC
1680 NJ-23 Suite 425
Wayne, NJ 07470
(973) 694-0800

1          (Commencement of proceedings at 02:53:56 P.M.)

2

3          THE COURT:  Okay.  We're on the record in

4    Hantman, et al. vs. Naar, et al.  at civil action

5    number 18-11047(KM).  And it's about five minutes

6    before 3:00 on the afternoon of June 5th, 2019.  Can I

7    have appearances of counsel, please?

8          MR. COHEN:  Good afternoon, Your Honor.

9    Jonathan Cohen; Kishner, Miller, Himes, for the

10   plaintiffs.

11         THE COURT:  Good afternoon.

12         MR. WEISBROT:  Ari Weisbrot on behalf of the

13   Avatar defendants, which includes Garth Naar.  Good

14   afternoon, Your Honor.

15         THE COURT:  Good afternoon.

16         MR. KLEIN:  Good afternoon, Judge.  David

17   Klein from Brach Eichler on behalf of Silvan.

18         THE COURT:  Good afternoon.

19         MR. FINESTEIN:  Good afternoon, Your Honor.

20   Russell Finestein of Finestein Malloy, also for --

21   counsel for Silvan.

22         THE COURT:  Good afternoon.

23         MS. ROSENBLOOM:  Your Honor, Betsy Rosenbloom,

24   Williams, Caliri, Miller and Otley on behalf of Silvan

25   (indiscernible).

4

1          THE COURT:  Do we each have clients here?  I

2   mean, you can bring your clients up because I'm going

3   to have a few -- I'm going to have a few questions for

4   them as -- as we --

5          MR. KLEIN:  My client's here, Judge.

6          (Brief Pause.  Indiscernible speaking.)

7          THE COURT:  Why don't we introduce -- why

8   don't we introduce our clients?

9          MR. COHEN:  Your Honor, I have Mr. Eric

10  Hantman here for the plaintiffs.

11         THE COURT:  Okay.

12         MR. WEISBROT:  Your Honor, Garth Naar is here

13  on behalf of himself and on behalf of (indiscernible).

14         THE COURT:  All right.  Good afternoon.

15         MR. KLEIN:  Good afternoon, Judge.  This is

16  Alex Huang on behalf of Silvan.

17         THE COURT:  Alex?

18         MR. KLEIN:  H-U-A-N-G.

19         THE COURT:  Okay.  And that's on behalf of all

20  of the Silvan defendants, or --

21         MR. KLEIN:  Well, all of the Silvan

22  defendants.  The title companies are here representing

23  Silvan and then they have their own contribution to

24  (indiscernible).

25         THE COURT:  All right.  And I'll -- I'll

1    direct whatever questions I might have for counsel to

2    -- for the clients to -- just to counsel and that

3    should be fine.

4           All right.  Well, Mr. Cohen, I understand that

5    we have reached a settlement in this case.  Is that

6    right?

7           MR. COHEN:  Yes, Your Honor, subject to

8    execution of a formal settlement agreement.  We have --

9           THE COURT:  And it -- it would need to be

10   executed -- you say this is a shareholder derivative

11   suit and --

12          MR. COHEN:  That's correct.

13          THE COURT:  -- under the Rules, you -- you

14   feel that you -- you need the formal approval of the

15   district judge.  So we're settling it.  We're putting

16   the terms on the record and the -- the formal approval

17   would be sought after today.  Is that right?

18          MR. COHEN:  Correct.  We're also seeking -- so

19   -- ordering the settlement agreement.

20          THE COURT:  All right.  Well why don't you,

21   then, if you would, place the terms of the settlement

22   agreement on the record?

23          MR. COHEN:  Sure, Your Honor.  The agreement

24   in principal is for the Avatar defendants and the

25   plaintiffs, for control of two properties; 57 Mountain

1   Avenue and 375 North 10th to be sold as follows.  90

2   days from settlement, Mr. Naar will have authority to

3   market and sell the properties with veto rights by Mr.

4   Hantman as representative for the plaintiffs.

5            After -- after that 90-day period, Mr. Hantman

6   would step in to control and attempt to sell the

7   properties with the understanding that -- that any veto

8   would only -- would not exist for Mr. Naar as to the --

9   the price of the pro -- the mou -- Mountain Avenue

10  property and that the floor would be 1.4 million.

11           At settlement, mis -- the Avatar defendants

12  will provide $85,000 in cash upon settlement coming

13  from -- 25,000 coming from the Mountain Avenue account

14  and 60,000 coming from Mr. Naar's Morgan Stanley

15  account.

16           Next, the Avatar defendants, Mr. Naar and

17  Avatar Management in their names will agree to a

18  consent judgment for a total amount of 1.55 million

19  with the understanding that the properties and the net

20  sale proceeds from the properties I just mentioned,

21  Mountain Avenue and three -- 375 North 10th, any

22  proceeds from there will be deducted and credited

23  against that top consent judgment amount.

24           Additionally, the Avatar defendants have

25  agreed to make payments of $10,000 per month to the

7

1   plaintiffs and also agree to, within each year until

2   full payment is made, to -- agree to pay $350,000 of

3   payments.

4           If they've satisfied those obligations, then

5   the plaintiffs will stay enforcement of the consent

6   judgement.  Additionally, as I previously -- previously

7   stated, Your Honor, we will be seeking for the

8   settlement agreement to be so ordered and we have also

9   agreed that Mr. Naar will allocute to the financial

10  statement and backup documents that he has provided to

11  date.

12          The last point that I want to make on the

13  record is that --

14          THE COURT:  And how is that allocution going

15  to take place?

16          MR. COHEN:  I -- I would imagine --

17          THE COURT:  By affidavit, or --

18          MR. COHEN:  Open record in front of Judge

19  McNulty was the way I had envisioned it.

20          THE COURT:  All right.

21          MR. COHEN:  Based upon the representations and

22  the documents that have been provided to -- to date.

23          THE COURT:  Okay.  Continue.

24          MR. COHEN:  And Silvan will be providing

25  $50,000.  We had -- just had a discussion that that

1   $50,000 will be paid into an escrow account and Mr.

2   Klein, who's counsel for Silvan, for each of the two

3   loans that still need to be paid off to Silvan,

4   Catherine and Schofield (phonetic), 25,000 which will

5   be paid to the plaintiffs in advance of the -- of the

6   closings on both of those transactions.

7           THE COURT:  All right.  Mr. Weisbrot, anything

8   to add?

9           MR. WEISBROT:  Just a couple of quick things.

10  First of all, just to clarify, this is not in any way

11  an agreement in principal.  This is an agreement that

12  even though it was subject to a written settlement

13  agreement we would hope to be so ordered by Judge

14  McNulty, it is binding on all parties as of today.  And

15  I suspect the Court is going to at least ask each of

16  the parties themselves to acknowledge their

17  understanding that this settlement is binding on

18  (indiscernible) today.

19          I was -- I know --

20          THE COURT:  Assuming -- you know, absolutely.

21  I agree.  You know, if for some reason, Judge McNulty

22  decided not to approve, I guess that would change the

23  game, but --

24          MR. WEISBROT:  Right, but what I meant was,

25  you know, the settlement isn't contingent on us coming

1  up with an agreement, although I suppose being

2  contingent --

3            THE COURT:  That's my understanding.  Yes.

4            MR. WEISBROT:  Okay.  In any event, I -- I

5  just want to make sure that what counsel said was

6  clear.  This veto authority on the sales with respect

7  to when Mr. Hantman is -- is trying to market and sell

8  it is -- the veto is for anything below $1.4 million.

9  Anything above it is not subject to a veto.  I'm not

10  (indiscernible), but all of the actions of both Mr.

11  Hantman and Mr. Naar during their time --

12            THE COURT:  We're talking approval, right?

13  When you --

14            MR. WEISBROT:  Right.

15            THE COURT:  -- say veto, you're saying --

16            MR. WEISBROT:  Everything has to be done on

17  --

18            THE COURT:  Right.

19            MR. WEISBROT:  -- contemporaneous notice of

20  whatever offers or whatever efforts are being made.  To

21  clarify the allocution, I'm not sure that really is the

22  word that I would have used.  He -- because it implies

23  sort of a -- what I think counsel is asking for is that

24  he acknowledge under oath that the financial

25  disclosures he gave were accurate as opposed to going

10

1  through all the (indiscernible).  Is that --

2         MR. COHEN:  That's correct.

3         THE COURT:  Is that correct, mis -- that's

4  correct, Mr. Cohen?

5         MR. WEISBROT:  And finally, Your --

6         MR. COHEN:  That's correct.

7         THE COURT:  Okay.

8         MR. WEISBROT:  And then finally, obviously

9  full releases for all parties, cross releases in favor

10  of everybody on every side.  Other than that, I'm in

11  agreement.

12         THE COURT:  All right.

13         MR. COHEN:  I -- I agree with that as well.

14         THE COURT:  Any -- anything to add by any of

15  the Silvan attorneys?

16         MR. KLEIN:  Yes, Judge.  The total

17  contribution of Silvan as stated is $50,000, which will

18  be divided as between Silvan and its title insurers,

19  and that will be memorialized as -- as between us.  The

20  releases, Mr. Weisbrot has already spoken to.  In terms

21  of the two remaining properties that are the subject of

22  the suit --

23         THE COURT:  Mr. Klein, do you think or do you

24  want to give us the breakdown of the numbers between

25  the three of you right now, or is that not necessary?

1          MR. KLEIN:  No.  I don't think that's

2  necessary judge.  It will be --

3          THE COURT:  All right.

4          MR. KLEIN:  It will be memorialized between us

5  and I think that that's sufficient.

6          THE COURT:  Okay.

7          MR. KLEIN:  On the remaining two properties

8  that haven't been sold, which are the Schofield and

9  Catherine properties, if the properties do not close by

10  August 15th of this year, the default rate of interest

11  will go back to 22 percent and legal fees from that day

12  forward will be added to the payoff amounts.  Other

13  than that, those are the only other --

14          THE COURT:  Conditions?

15          MR. KLEIN:  -- issues that I wanted to

16  address.

17          THE COURT:  All right.  Mr. Finestein, Ms.

18  Rosenbloom, anything to add?

19          MR. FINESTEIN:  No, Your Honor.

20          MS. ROSENBLOOM:  No, Your Honor.

21          THE COURT:  All right.  Thank you.  All right.

22  I do --

23          MR. WEISBROT:  Judge?

24          THE COURT:  Yes.

25          MR. WEISBROT:  I'm sorry.  Just one more

1  thing.  I assume these -- these things are -- goes

2  without saying, but I just want to make clear, we would

3  also request that the settlement agreement include non-

4  disparaging and confidentiality clauses.  A

5  confidentiality clause prevents the -- the subjects --

6  I guess -- it's a derivative action, so to the extent

7  necessary that it's required disclosure by law.  But

8  other than that, I don't think anybody wants anybody

9  discussing this outside of (indiscernible).

10         MR. KLEIN:  Your Honor, I neglected to mention

11  and I don't think anybody said it, but the action will

12  be dismissed with prejudice and I don't think that the

13  -- that we've had a date for that.  I assume upon

14  execution of the settlement agreement.

15         MR. COHEN:  Okay.  We have the execution of

16  the settlement agreement.  We have to have it approved

17  and so ordered by Judge McNulty.  I'm -- yes, I was

18  contemplating dismissal --

19         THE COURT:  You'll do that with all due

20  dispatch.  Right?

21         MR. COHEN:  Correct.  Right.  And just in --

22  with respect to the confidentiality, I'd add the caveat

23  that so long as everyone -- so long as there's been no

24  breach by any of the parties under the settlement

25  agreement.  If one of the parties breaches, they

1  breach, and then --

2          THE COURT:  Well --

3          MR. WEISBROT:  I'm not going to -- I -- I

4  don't know that that's standard.  I think that

5  confidentiality is confidentiality.  If someone

6  breaches, you have a (indiscernible) clause.  But as

7  long as there's a confidentiality clause,  I don't care

8  how you (indiscernible).

9          THE COURT:  All right.  Yeah.  I mean, there's

10  obviously limitations.  Confidentiality clauses are

11  becoming less and less popular with courts and state

12  legislatures.  So -- and it being a derivative suit, I

13  -- you know, we -- we can -- you can only agree to make

14  it confidential to -- to a certain degree.  And if you

15  all can agree to keep it confidential amongst

16  yourselves, that's -- that's fine.  Yes.

17          MR. WEISBROT:  Obviously, it's got to be

18  disclosed to the (indiscernible).

19          MR. COHEN:  We haven't discussed this issue at

20  all, at any point.  So I really haven't thought through

21  --

22          MR. WEISBROT:  It's going to be a --

23          MR. COHEN:  I don't have an issue with that.

24  I'm just saying I haven't thought through the issues.

25          MR. WEISBROT:  With all the carve-out --

14

1  sorry.  We understand the (indiscernible).  By the way,

2  I -- I just want to say, I -- we don't agree that this

3  is a derivative.  I mean, that doesn't affect anything.

4          THE COURT:  Right.

5          MR. WEISBROT:  But I know the Court said it, I

6  know Jonathan just said it.  We don't agree that's what

7  this is, but it has no impact on anything we said here

8  today.

9          THE COURT:  Okay.  And I -- I'm not really,

10 you know, voicing my opinion that it is or that it

11 isn't, either.  I'm just repeating that Mr. Cohen has

12 said that and that he's going to seek the approval from

13 Judge McNulty.  And it sounds like everybody else, if

14 they think approval is necessary or not necessary, you

15 don't feel strongly either way.  Right?

16         MR. WEISBROT:  No.  I -- I -- it doesn't

17 change anything that was --

18         THE COURT:  Right.  Okay.  All right.  Let me

19 ask -- I have a few questions for the -- for the

20 principals.  Mr. Hantman, can you take the -- push the

21 microphone so Mr. Hantman can speak into it.  You can

22 remain seated, Mr. Hantman.  That's fine.  You -- you

23 can remain seated.  Did you terms of the settlement as

24 stated by the attorneys?

25         MR. HANTMAN:  Yes, Your Honor.

1          THE COURT:  And do you understand the terms of

2    the settlement?

3          MR. HANTMAN:  Yes, Your Honor.

4          THE COURT:  Do you have any questions for your

5    attorney about it?

6          MR. HANTMAN:  No, Your Honor.

7          THE COURT:  Did you have adequate opportunity

8    to speak to your attorney regarding the settlement?

9          MR. HANTMAN:  Yes, Your Honor.

10         THE COURT:  Did anyone coerce, threaten, or

11   pressure you into agreeing to the settlement?

12         MR. HANTMAN:  No, Your Honor.

13         THE COURT:  Has anyone made any promises to

14   you other than the terms of the settlement as stated on

15   the record by the attorneys?

16         MR. HANTMAN:  No, Your Honor.

17         THE COURT:  And do you understand that instead

18   of agreeing to the settlement, you have the right to

19   proceed to trial, but that by agreeing to the

20   settlement, you're waiving that right?

21         MR. HANTMAN:  Yes, Your Honor.

22         THE COURT:  And do you understand that the

23   settlement is binding upon you?

24         MR. HANTMAN:  Yes, Your Honor.

25         THE COURT:  And do you consent to the

1  settlement knowingly, freely, and voluntarily?

2          MR. HANTMAN:  Yes, Your Honor.

3          THE COURT:  Are you satisfied with the

4  representation of your attorney?

5          MR. HANTMAN:  Yes, Your Honor.

6          THE COURT:  And have you taken any medications

7  or other substances or do you suffer from any mental

8  difficulties that would affect your ability to

9  understand this proceeding or agree to this settlement?

10         MR. HANTMAN:  No, Your Honor.

11         THE COURT:  All right. Mr. Naar, why don't you

12  sit up in front of that microphone so we can pick up

13  your voice.  Did you hear the terms of the settlement

14  as stated by the attorneys?

15         MR. NAAR:  I did, Your Honor.

16         THE COURT:  Do you understand the terms of the

17  settlement?

18         MR. NAAR:  Yes.

19         THE COURT:  Now, do you have any questions for

20  your attorney about it?

21         MR. NAAR:  Not at this time.

22         THE COURT:  Did you have adequate opportunity

23  to speak to your attorney regarding the settlement?

24         MR. NAAR:  I did.

25         THE COURT:  Did anyone coerce, threaten, or

1   pressure you into agreeing to the settlement?

2          MR. NAAR:  No, Your Honor.

3          THE COURT:  Has anyone made any promises to

4   you other than the terms of the settlement as stated on

5   the record by the attorneys?

6          MR. NAAR:  No, Your Honor.

7          THE COURT:  Do you understand that instead of

8   agreeing to the settlement, you have the right to

9   proceed to trial but that by agreeing to the

10  settlement, you're waiving that right?

11         MR. NAAR:  Yes.

12         THE COURT:  Do you understand that the

13  settlement is binding upon you?

14         MR. NAAR:  Yes.

15         THE COURT:  Do you consent to this settlement

16  knowingly, freely, and voluntarily?

17         MR. NAAR:  Yes.  I do.

18         THE COURT:  Are you satisfied with the

19  representation of your attorney?

20         MR. NAAR:  I am.

21         THE COURT:  Have you taken any medications or

22  other substances or do you suffer from any mental

23  difficulties that would affect your ability to

24  understand this proceeding or to agree to this

25  settlement?

18

1            MR. NAAR:  I do not.

2            THE COURT:  All right.  Mr. Huang.

3            MR. HUANG:  Yes.

4            THE COURT:  Same questions.  Do you – did you

5    hear the terms of the settlement as stated by the

6    attorneys?

7            MR. HUANG:  Yes.  I did.

8            THE COURT:  Do you understand the terms of the

9    settlement?

10           MR. HUANG:  Yes.

11           THE COURT:  Do you have any questions for your

12   attorney about it?

13           MR. HUANG:  No.

14           THE COURT:  No?

15           MR. HUANG:  I don't have any questions.

16           THE COURT:  No?  All right.  Did you have

17   adequate opportunity to speak to your attorney

18   regarding the settlement?

19           MR. HUANG:  Yes.

20           THE COURT:  Did anyone coerce, threaten, or

21   pressure you into agreeing to the settlement?

22           MR. HUANG:  No.

23           THE COURT:  Has anyone made any promises to

24   you other than the terms of the settlement as stated on

25   the record by the attorneys?

1          MR. HUANG:  No.

2          THE COURT:  Do you understand that instead of

3    agreeing to the settlement, you have the right to

4    proceed to trial but that by agreeing to the

5    settlement, you're waiving that right?

6          MR. HUANG:  Yes.  I do understand.

7          THE COURT:  Do you understand that the

8    settlement is binding upon your company?

9          MR. HUANG:  Yes.

10         THE COURT:  Do you consent to this settlement

11   on behalf of your company knowingly, freely, and

12   voluntarily?

13         MR. HUANG:  Yes.

14         THE COURT:  Are you satisfied with the

15   representation of your attorney?

16         MR. HUANG:  Yes.

17         THE COURT:  Have you taken any medications or

18   other substances or do you suffer from any mental

19   difficulties that would affect your ability to

20   understand this proceeding or agree to this settlement?

21         MR. HUANG:  No.

22         THE COURT:  All right.  I just ask Ms.

23   Rosenbloom and -- and Mr. Finestein, you have conferred

24   with your clients re -- regarding the settlement?

25         MS. ROSENBLOOM:  Just a clarification, Your

1    Honor.  Our client is Silvan, but (indiscernible).

2              THE COURT:  All right.

3              MS. ROSENBLOOM:  I have consulted with the

4    carrier as to our interests (indiscernible).

5              THE COURT:  All right.  And I -- I -- I simply

6    want the representation from you; we don't have a live

7    body here, but that your -- that your clients have been

8    apprised.  They know the -- the -- the upsides of

9    settlement and the downsides of settlement and they've

10   agreed freely, voluntarily, and knowingly to the

11   settlement as the -- as the terms have been stated on

12   the record?

13             MS. ROSENBLOOM:  The carrier is aware of the

14   (indiscernible) settlement of the case and are happy to

15   go forward.

16             THE COURT:  All right.  Mr. Finestein?

17             MR. FINESTEIN:  Similarly, Your Honor.  The

18   title companies that are involved are (indiscernible)

19   agreeable (indiscernible).

20             THE COURT:  All right.  Thank you.  Counsel,

21   we've stated the terms of the settlement on the record.

22   You will reduce this to writing after this proceeding

23   as you so chose.  The -- certainly, the transcript

24   could serve as the settlement if -- if everyone agrees.

25             Please understand that if there are

1 disagreements as to the agreement as it's reduced to

2 writing if that's what you so choose, the form but not

3 the underlying settlement may be discussed.  And if the

4 parties cannot agree on the form, the Court will decide

5 it based upon the record of the proceedings today.

6          Now, I leave it to you, Mr. Cohen, to take

7 what necessary steps you feel -- what steps you feel

8 are necessary to get that approval from Judge McNulty.

9 And I think that that concludes our business.  Do you

10 have anything further?

11          MR. COHEN:  Nothing further, Your Honor.

12          THE COURT:  Anything further --

13          MR. COHEN:  I just want to state --

14          THE COURT:  Anything further from any other

15 counsel?

16          MR. WEISBROT:  No, Your Honor, except to thank

17 the Court.

18          MR. COHEN:  We want to say thank you.  Thank

19 you.

20          MR. KLEIN:  We just wanted to thank Your Honor

21 for his tremendous efforts in putting together this

22 difficult settlement for us.  Thank you.

23          THE COURT:  Well, I -- I -- I thank you as

24 well, and I did want to tell your clients, I -- I

25 didn't have all of you back in the little room where,

1  you know, the little dungeon where we gather to try to

2  hammer out the terms of the settlement.  Had it been --

3  had it become necessary, I certainly would have grabbed

4  you and brought you back and, you know, tried to talk

5  turkey with you but you were all well-represented by

6  your counsel.  They had your interests at heart.  They

7  fought very hard for you.  They're very skilled

8  attorneys who know this area of the law inside out.

9  They're to be commended for the jobs that they did on

10  -- on behalf of all of you.  All right?

11          MR. WEISBROT:  Thank you, Your Honor.

12          MR. COHEN:  Thank you, Your Honor.

13          MR. WEISBROT:  Thank you very much.

14          THE COURT:  Thank you very much, folks.

15

16      (Conclusion of proceedings at 03:11:49 P.M.)

17

18

19

20

21

22

23

24

25

1

2

3       I, SARAH L. FETZ, Transcriptionist, do hereby

4   certify that the pages contained herein constitute a

5   full, true, and accurate transcript from the official

6   electronic recording of the proceedings had in the

7   above-entitled matter; that research was performed on

8   the spelling of proper names and utilizing the

9   information provided, but that in many cases the

10  spellings were educated guesses; that the transcript

11  was prepared by me or under my direction and was done

12  to the best of my skill and ability.

13      I further certify that I am in no way related to

14  any of the parties hereto nor am I in any way

15  interested in the outcome hereof.

16
17  /s/ Sarah L. Fetz                    08/15/19
18  Signature of Approved Transcriber       Date
19  Sarah L. Fetz, AD/T #626
20
21  King Transcription Services
22  3 South Corporate Dr., Suite 203
23  Riverdale, N.J. 07457
24  (973) 237-6080
25
26
27
28
29
30
31
32
33
34

1